No. 16-12279-P

# IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

_____

**VERNON MADISON,**

Petitioner-Appellant,

v.

**JEFFERSON S. DUNN, Interim Commissioner of the Alabama Department of Corrections, and the ATTORNEY GENERAL OF THE STATE OF ALABAMA,**

Respondents-Appellees.

_____

## MOTION FOR A CERTIFICATE OF APPEALABILITY
_____

Angela L. Setzer
Randall S. Susskind
Equal Justice Initiative
122 Commerce Street
Montgomery, Alabama 36104
Phone:   (334) 269-1803
Fax:     (334) 269-1806

Counsel for Vernon Madison

**EXECUTION SCHEDULED FOR MAY 12, 2016 6:00 P.M.**

# CERTIFICATE OF INTERESTED PERSONS

Undersigned counsel certifies the following persons may have an interest in the outcome of this case:

Blackburn, Kevin W. – Assistant Attorney General and counsel for Respondent;

Blackwell, Paul H., Jr. – Counsel for State on direct appeal and former Assistant Attorney General;

Davis, John, J. – Counsel for State in post-conviction proceedings and former Assistant Attorney General;

Dunn, Jefferson, S. – Interim Commissioner, Alabama Department of Corrections and Respondent

DuBose, Kristi K. – United States District Judge;

Furman, John P. – Counsel for Petitioner-Appellant at the district court;

Govan, Thomas – Counsel for Respondent-Appellee at state court competency proceedings;

Green, Cheryl – Victim;

Houts, James – Counsel for Respondent-Appellee;

King, Troy – Counsel for State in post-conviction proceedings and former Attorney General of Alabama;

Knizley, Dennis – Trial counsel for Petitioner-Appellant;

C-1

Madison, Vernon – Petitioner-Appellant;

McRae, Ferrill D. – Mobile County Circuit Court Judge;

McCann, Patrick F. – Counsel for Petitioner-Appellant in state post-conviction proceedings and at the district court;

Patterson, Tony – Warden, Holman Correctional Facility;

Powell, Arthur – Trial counsel for Petitioner-Appellant;

Pryor, William H. – Counsel for State on direct appeal and former Attorney General of the State of Alabama;

Reiland, Stephanie E. – Assistant Attorney General and counsel for Respondent;

Schulte, Julius – Victim;

Setzer, Angela L. – Counsel for Petitioner-Appellant;

Smith, Robert H. – Mobile County Circuit Court Judge;

Strange, Luther – Attorney General of the State of Alabama and Respondent;

Susskind, Randall S. – Counsel for Petitioner-Appellant;

Swiergula, Jennae. – Counsel for Petitioner-Appellant at state court competency proceedings and the United States District Court for the Southern District of Alabama;

Williams, Richard R. – Counsel for Petitioner-Appellant on direct appeal;

Willis, Jack – Counsel for State on direct appeal and former Ass. Att. General.

**Vernon Madison is scheduled to be executed by the State of Alabama on Thursday, May 12, 2016.**

Pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure, Rule 22-1 of the Eleventh Circuit Rules, and 28 U.S.C. § 2252, Petitioner Vernon Madison respectfully requests that this Court issue a certificate of appealability ("COA") for one issue on which habeas corpus relief was denied.

(1)     Whether it is debatable among jurists of reason that Mr. Madison's execution is prohibited by Ford v. Wainwright, 477 U.S. 399, 417-18 (1986) and Panetti v. Quarterman, 551 U.S. 930, 934-35 (2007). In rejecting Mr. Madison's claim, the state court imposed a higher burden on Mr. Madison than what Panetti requires and failed to consider evidence that Mr. Madison's recent thalamic stroke has resulted in a diagnosis of dementia and corresponding memory deficits. This decision is both contrary to and an unreasonable application of federal law and an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. A COA is now appropriate.

## LEGAL STANDARD FOR A CERTIFICATE OF APPEALABILITY

The standard for issuance of a COA is extremely low. A court should issue a COA where "reasonable jurists would find the district court's assessment of the constitutional claims debatable." Slack v. McDaniel, 529 U.S. 473, 484 (2000). The

1

Supreme Court has held that a petitioner is not required "to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus." Miller-El v. Cockrell, 537 U.S. 322, 338 (2003). "The question is the debatability of the underlying constitutional claim, not the resolution of that debate." Id. at 342. The Supreme Court has observed that "a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." Id. at 338.

For the reasons that follow, a COA is appropriate for the claim listed below, as it is undoubtedly debatable among jurists of reason. Appellate review is especially especially necessary because **Mr. Madison is scheduled to be executed on May 12, 2016.** See Barefoot v. Estelle, 462 U.S. 880, 893 (1983) ("In a capital case, the nature of the penalty is a proper consideration in determining whether to issue a certificate of probable cause. . . ."); see also Rudd v. Johnson, 256 F.3d 317, 319 (5th Cir. 2001) ("[B]ecause the present case involves the death penalty, any doubts as to whether a COA should issue must be resolved in Rudd's favor.")

## MR. MADISON IS ENTITLED TO A CERTIFICATE OF APPEALABILITY

On January 4, 2016, Mr. Madison was found unresponsive in his prison cell and fecally incontinent after suffering a thalamic stroke, which necessitated transfer from Holman and outside hospitalization. (Doc. 11-32 at 25; Doc. 11-60 at 13.) This

thalamic stroke is particularly relevant to Mr. Madison's competency because it resulted in significant memory loss. (Doc. 8-3 at 19; Doc. 8-1 at 101-04.) The thalamus is a "connection organ" that links the limbic system in the lower area of the brain to the frontal lobes. (Doc. 8-1 at 101-02.) When the thalamus is damaged, "the most common thing we see" is memory loss. (Doc. 8-1 at 102; Doc. 8-3 at 19.)

Consistent with that pattern, Mr. Madison suffers from vascular dementia and resulting retrograde amnesia. (Doc. 8-3 at 19; Doc 8-1 at 102, 107.) Clinical features of vascular dementia, or vascular neurological disorder, include the onset of cognitive deficits, like memory loss, that are temporally related to a cerebrovascular event, such as a stroke. Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 621 (5th Ed. 2014); (Doc. 8-1 at 107-108.) In this case, Mr. Madison suffers from retrograde amnesia, meaning his episodic memory–memory related to events that happened to him in the past–has significantly declined and he does not have an independent recollection of the offense for which he was convicted. Doc. 8-3 at 19; Doc. at 102-04, 110.)

Indeed, testing conducted by Dr. John Goff, a licensed neuropsychologist who conducted extensive neuropsychological testing and evaluated Mr. Madison's competence to be executed, determined that Mr. Madison has an IQ score of 72, a significant decline from his previous scores, and placing him in the borderline range

3

of intelligence (Doc. 8-3 at 17, 20, Doc 8-1 at 104), and that Mr. Madison has a Working Memory Score of 58, demonstrating severe memory deficits. (Doc. 8-3 at 17, Doc. 8-1 at 97-98.)[1] There is also evidence Mr. Madison has difficulty processing information. During the examination, Dr. Goff noted that Mr. Madison was unable to rephrase simple sentences. (Doc. 8-3 at 18.) Consistent with this, the court appointed expert, Dr. Karl Kirkland, determined that Mr. Madison has experienced a significant decline in his cognitive functioning as a result of multiple strokes he has suffered over the past couple of years. (Doc. 8-3 at 8-9; Doc. 8-1 at 74.)

Consequently, Mr. Madison cannot remember numerous events that have occurred over the past 30 years. (Doc. 8-3 at 19.) Critically, he cannot independently recall the facts of the offense he is convicted of or the previous legal proceedings in his case. (Doc. 8-3 at 19; Doc. 8-1 at 110.) Dr. Goff reported that Mr. Madison was unable to recollect the sequence of events from the offense, to his arrest, to his trial and could not recall the name of the victim. (Doc. 8-3 at 18-19.) Ultimately, Dr. Goff

---

[1] This was evidenced by other testing conducted by Dr. Goff: Mr. Madison could not recall any of the 25 elements in a brief story vignette Dr. Goff read him, could not remember the alphabet past the letter G, could not perform serial three additions, could not remember the name of the previous United States President, named Guy Hunt as the governor of Alabama, and could not remember the name of the Warden at Holman Correctional Facility. (Doc. 8-3 at 16). Dr. Karl Kirkland, the expert who was appointed by the Circuit Court to evaluate Mr. Madison's competency, found that during his examination, Mr. Madison was only *partially* oriented to time. (Doc. 8-3 at 8).

4

concluded that Mr. Madison does not "seem to understand the reasoning behind the current proceeding as it applies to him" and does not understand why he is scheduled to be executed by the State.  (Doc. 8-3 at 19-20; Doc. 8-1 at 110, 119-20.)

Prior to this January stroke, Mr. Madison has suffered other strokes which have contributed to his cognitive decline.  (Doc. 8-1 at 74-75, 104-07)  These strokes include a basilar artery occlusion, causing bilateral cerebral and occipital infarctions in May 2015,[2] resulting in increased brain pressure, white matter attenuation, and possible temporal lobe damage, which can cause memory difficulties.[3]  (Doc. 8-3 at 13, Doc. 8-1 at 104-05.)  In the aftermath of the stroke, Mr. Madison was in an "altered mental status," (Doc. 8-3 at 13; Doc 11-28 at 43), and deemed to have a diminished ability to comprehend.  (Doc. 11-30 at 14.)  He was also unaware of where he was or why he was there, and appeared confused.  (Doc. 11-30 at 32, 36; Doc. 11-31 at 2, 7.)  His speech was slurred, he exhibited signs of an impaired memory, and could not remember the officers who were guarding him, whom he had known for years.  (Doc. 11-30 at 36, 39; see also Doc. 8-3 at 16, 19.)

---

[2]Records indicate that Mr. Madison suffered strokes prior to the May 2015 incident which negatively impacted his cognitive and bodily functioning. (Doc. 8-3 at 19; Doc. 8-1 at 104.)

[3]As a result, Mr. Madison was taken to the ICU and a neurosurgeon was placed on standby due to a high risk of fatal brain herniation. (Doc. 11-28 at 46.)

5

As a result of these multiple strokes, Mr. Madison also suffers from encephalomalacia, (Doc. 11-60 at 41, 49, 141; Doc. 8-1 at 106), which means that there are areas of his brain where the tissue is dead. (Doc. 8-1 at 106-07.) An MRI scan in January of 2016 revealed, in addition to the thalamic stroke, that Mr. Madison's history of strokes caused encephalomalacia in the occipital lobes and cerebellar hemispheres. (Doc. 11-60 at 13, Doc. 8-1 at 106-07.)

In addition to the strokes, Mr. Madison suffers from multiple medical conditions that, over the years, have led to worsening cognitive capacity, including Type 2 Diabetes, chronic hypertension, and chronic small vessel ischemia.[4] (Doc. 8-3 at 19; Doc. 8-3 at 9; Doc. 8-1 at 73-74, 105-06.) Mr. Madison also suffers from occipital angioma–an abnormal collection of blood vessels–which likely contributed to his strokes and debilitating headaches. (Doc. 11-23 at 18.) Furthermore, Mr. Madison now speaks in a dysarthic or slurred manner, is legally blind, can no longer walk independently, and has urinary incontinence as a consequence of damage to his brain. (Doc. 11-34 at 59; Doc. 8-1 at 73-74, 92-93, 104-105.)

Mr. Madison's legal team has noticed changes in his mental functioning and

---

[4]This type of ischemia, also known as "cerebral small vessel disease," is a "leading cause of cognitive decline." John G. Baker et al., Cerebral Small Vessel Disease: Cognition, Mood, Daily Functioning, and Imaging Findings from a Small Pilot Sample, 2.1 Dementia & Geriatric Cognitive Disorders 169 (2012); available at http://www.ncbi.nlm.nih.gov/pmc/articles/PMC3347879/#

6

ability to communicate that are consistent with the symptoms of these medical diagnoses.  Although Mr. Madison exhibited disoriented behavior in June 2015 (see Doc. 8-1 at 20-21, ¶¶ 4, 6-9.), Ashley Edwards, an EJI paralegal who provided support services to Mr. Madison, noticed a precipitous decline in his functioning in January of 2016. (Doc. 8-1 at 21,¶ 10.) Following Mr. Madison's hospitalization in January 2016, Ms. Edwards observed that his speech was more slurred and halting, and he often paused while speaking to stare blankly into the distance.  (Doc. 8-1 at 21-22, ¶ 11.)  Mr. Madison's short-term memory also suffered. When Ms. Edwards visited him in January, he struggled to retain basic information and repeated a question three times, oblivious to the fact that it had been answered. (Doc. 8-1 at 22, ¶ 13.)

Since his hospitalization in January 2016, one of Mr. Madison's attorneys, Jennae Swiergula has observed that Mr. Madison asks the same few questions repeatedly and does not give any indication that he remembers having had the same conversation before. (Doc. 8-1 at 25, ¶ 8.) Mr. Madison has increasingly focused on a limited number of familiar topics and this tendency has become more pronounced since his medical episode last month. Outside of those topics, his speech is nonsensical and he is unable to answer questions in order to clarify what he is saying. (Id.)

Mr. Madison also now exhibits an even more profound level of disorientation and confusion. For example, he rarely leaves his bed and expresses confusion about where he is. He reported frequently urinating on himself because "no one will let me out to use the bathroom," despite the fact that Mr. Madison has a toilet just inches from his bed, inside of his cell. (Doc. 8-1 at 22, ¶ 12.) He has also exhibited signs of confusion while communicating with his attorney, at one point asking a question about an in-person meeting he believed occurred the previous day, when in fact, his attorney had not seen him for several months. (Doc. 8-1 at 25, ¶ 7.) During a legal visit in February 2016, he indicated confusion about the status of his case, stating that he plans to move to Florida or live abroad after he is released from prison. (Doc. 8-1 at 24-25, ¶¶ 4, 9.) Additionally, Mr. Madison has presented as increasingly and uncharacteristically disheveled, wearing a visibly soiled uniform, covered in stains and hair shavings, and on his bare feet, wearing plastic shower sandals that did not match. (Doc. 8-1 at 21-22, ¶ 11.) In subsequent visits, his hygiene has continued to deteriorate. (Doc. 8-1 at 25, ¶ 10.)

As a result of these strokes and other serious medical conditions, Mr. Madison suffers from a major vascular neurological disorder, or vascular dementia, which has resulted in significant memory impairment, a decline in cognitive functioning, and ultimately an inability to rationally understand the reason why the State is seeking to

8

execute him. As such, he is incompetent to be executed under the Eighth Amendment and the standards established by <u>Ford v. Wainwright</u>, 477 U.S. 399, 417-18 (1986) and <u>Panetti v. Quarterman</u>, 551 U.S. 930, 934-35 (2007).

I. **<u>Jurists of Reason Could Debate Whether The Eighth Amendment Prohibits Mr. Madison's Execution Because He Does Not Understand Why the State of Alabama Is Attempting to Execute Him.</u>**

In <u>Ford v. Wainwright</u>, the United States Supreme Court held that the Eighth Amendment prohibits states from executing those who are mentally incompetent. 477 U.S. 399, 409-10 (1986). Subsequently, in <u>Panetti v. Quarterman</u>, the Court reaffirmed the basic premise of <u>Ford</u>, noting that "today, no less than before, we may seriously question the retributive value of executing a person who has no comprehension of why he has been singled out and stripped of his fundamental right to life." 551 U.S. 930, 957 (2007) (<u>quoting</u> <u>Ford</u>, 477 U.S. at 409-410). The retributive purpose of capital punishment is called into question where an individual's mental state is so distorted "that his awareness of the crime and punishment has little or no relation to the understanding of those concepts shared by the community as a whole." <u>Panetti</u>, 551 U.S. at 959.

In <u>Panetti</u>, the Court reviewed the lower court's test for evaluating competency to be executed – first, that the prisoner is aware that he committed the murders; second, that the prisoner is aware that he will be executed; and third, that the prisoner

9

is aware that the reason that the State seeks to execute him is his commission of the murders – and determined that it was too restrictive under the Eighth Amendment. 551 U.S. at 956. The Court found that a prisoner may be incompetent even though he "can identify the stated reason for his execution," and explained that for purposes of determining competency to be executed, a prisoner's "awareness of the crime and punishment" is not merely a "prisoner's awareness of the State's rationale for an execution," but rather encompasses, at a minimum, "a rational understanding of it." Id. at 959; see also Weeks v. Jones, 52 F.3d 1559, 1568 (11th Cir. 1995) ("A convict is incompetent, to be executed if, . . . , the convict cannot understand the nature of the pending proceeding, what he or she was tried for, the reason for the punishment, or the nature of the punishment. . . . [or] if, . . . , the convict lacks sufficient capacity to recognize or understand any fact which may exist which would make the punishment unjust or unlawful, or lacks the ability to convey such information to counsel or the court") (emphasis added) (citing Standard 7-5.6, American Bar Association Criminal Justice Mental Health Standards).

     Reasonable jurists would find it debatable that application of either the Weeks or Panetti standard to the evidence and testimony in this case establishes that Mr. Madison is not competent to be executed. Dr. Goff determined that as a result of a thalamic stroke, Mr. Madison suffers from major vascular neurological disorder or

vascular dementia, which has resulted in significant memory impairment, a decline in cognitive functioning, and ultimately an inability to rationally understand the reason why the State is seeking to execute him. (Doc. 8-3 at 19; Doc. 8-1 at 101, 105, 107, 110, 119-20.)

Nevertheless, in denying habeas relief, the district court concluded that "whether the court was required under Ford to consider mental issues that may fall outside of the clinical definition of mental illness but still affect rational thinking is moot" because the state court did consider such evidence. (Doc. 13 at 16 (emphasis added).) At a minimum, it is debatable that the district court was wrong on both counts.

**First**, the state court made it clear that the standard it was applying for determining competency is predicated on a finding that the Petitioner "**suffers from a mental illness** . . . ." (Doc.8-2 at 152; see also id. at 158.) By applying a standard that required Mr. Madison prove he suffers from mental illness in order to establish that he is incompetent to be executed, the state court applied a legal test that removed consideration of Mr. Madison's dementia, and corresponding cognitive deficits, by its very terms. Nothing in Ford or Panetti limits the competency inquiry solely to the question of whether the prisoner suffers from mental illness. This standard is

11

contrary to and an unreasonable application of Panetti.[5]

In Ford, the Supreme Court made clear that it is unconstitutional to execute "a person who has no comprehension of why he has been singled out and stripped of his fundamental right to life." 477 U.S. at 409. In Panetti, the Court further clarified that this principle dictates that a prisoner is incompetent to be executed if "he cannot reach a rational understanding of the reason for the execution." 551 U.S. at 958. The crux of Supreme Court's holding in Panetti is that a prisoner must have a rational understanding of why he is being executed and that a mental impairment that interferes with that understanding will render a prisoner incompetent. 551 U.S. at 958 (determination of competency requires inquiry into "prisoner's ability to 'comprehen[d] the reasons' for his punishment" or "a determination into whether he is 'unaware of . . . why [he is] to suffer it'") (quoting Ford, 477 U.S. at 418 and id. at 423 (Powell, J., concurring)); see also Stanley v. Chappell, No. 3:07-CV-04727-EMC, 2013 WL 3811205, at *1 (N.D. Cal. July 16, 2013) (finding death-row prisoner incompetent to be executed due to dementia caused, at least in part, by encephalomalacia); Mays v. State, 476 S.W. 3d 454, 461 (Tex. Ct. App.

---

[5]As the Court explained in Panetti, AEDPA does not "prohibit a federal court from finding an application of a principle unreasonable when it involves a set of facts 'different from those of the case in which the principle was announced.'" 551 U.S. at 960 (quoting Lockyer v. Andrade, 538 U.S. 63, 76 (2003).

2015) (holding that death row prisoner made substantial showing of incompetence to be executed in part because of dementia). Indeed, in Panetti, the Court rejected a standard as "too restrictive to afford a prisoner the protections guaranteed by the Eighth Amendment" where it rendered certain features of mental illness irrelevant to the determination of competency once it was determined that the prisoner is "aware the State identified the link between his crime and the punishment to be inflicted." Id. at 956-57, 960.

Similarly here, by failing to consider whether Mr. Madison was incapable of rationally understanding his execution because of his dementia and corresponding memory deficits, the circuit court unreasonably imposed a standard more restrictive than what the law clearly established by Panetti requires. Consequently, it is debatable that the state court's determination was both an unreasonable application of, and contrary to, clearly established federal law. See Panetti, 551 U.S. at 958-60; Williams v. Taylor, 529 U.S. 362, 409 (2000) ("[W]hen a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case, a federal court applying § 2254(d)(1) may conclude that the state-court decision falls within that provision's 'unreasonable application' clause"); Madison v. Commissioner, Ala. Dept. of Corr., 677 F.3d 1333, 1338 (11th Cir. 2012) ("[A] state court decision is contrary to clearly established law under § 2254(d)(1) when it imposes a burden on

13

the petitioner that is higher than what Supreme Court precedent requires") (citing Williams, 529 U.S. at 405-406).

**Second**, by limiting its analysis to a determination of whether Mr. Madison was incompetent to be executed as a result of mental illness, the state court failed to consider the critical facts of Mr. Madison's dementia and corresponding retrograde amnesia. The state court made no mention of Mr. Madison's diagnosis of dementia anywhere in its order, let alone did it engage in an analysis about how that diagnosis impacts Mr. Madison's ability to rationally understand his impending execution. The state court failed to address the evidence that the memory loss seen in patients with dementia is pathological and therefore is distinct from typical memory loss or forgetfulness many people see as they age. (Doc. 8-1 at 109.) The state court failed to address evidence that individuals with dementia will vary in their presentation and can have an inconsistent memory, or how this diagnosis means that Mr. Madison's cognitive functioning will likely continue to decline. (Doc 8-1 at 108.) The court's appointed expert, Dr. Kirkland, did not dispute Dr. Goff's diagnosis of dementia. (See Doc. 8-1 at 79 "[Dr. Goff] does a typically thorough job, and it looks like he did.")

The state court's failure to even consider evidence of dementia, and its impact on Mr. Madison's cognitive functioning and understanding of the proceedings against

14

him cannot be construed as a reasoned rejection of that evidence. Consequently, it is debatable that its decision was based on an unreasonable determination of the facts in light of the evidence presented at the competency proceeding. 28 U.S.C. § 2254(d)(2); see also Brumfield v. Cain, 135 S. Ct. 2269, 2279-82 (2015) (finding that the state court's apparent failure to examine evidence of the petitioner's intellectual disability, which petitioner provided in support of an Atkins claim, was an unreasonable determination of fact); Smith v. Campbell, 620 Fed. Appx. 734, 748-49 (11th Cir. 2015) (Alabama court's factual determination that failed to take into account specific facts presented by defendant was unreasonable under 28 U.S.C. 2254(d)(2)).

   Finally, Mr. Madison's argument and citations to Panetti v. Quarterman, 551 U.S. 930 (2007) and Atkins v. Virginia, 536 U.S. 304 (2002) were part of the competency claim that was litigated in state court. Mr. Madison is not arguing for an extension of Atkins. Rather, his argument is that dementia is the basis for incompetency. Because competency arguments do not become ripe until execution is imminent, see Panetti, 551 U.S. at 946 ("claims of incompetency to be executed remain unripe at early stages of the proceedings"); Stewart v. Martinez-Villareal, 523 U.S. 637, 645 (1998) (competency to be executed claim not ripe until execution is imminent), it is debatable that the district court erred in finding this argument subject

15

to the provisions of 28 U.S.C. § 2244(b). As such, it is at least debatable that Mr. Madison's argument was properly exhausted and it was wrong from the district court to conclude otherwise.

## **CONCLUSION**

For these reasons, Petitioner Vernon Madison moves this Court to grant a COA in order to determine that he is incompetent to be executed under the Eighth and Fourteenth Amendments.

Respectfully submitted,

/s/ Angela L. Setzer
ANGELA L. SETZER
RANDALL S. SUSSKIND
Equal Justice Initiative
122 Commerce Street
Montgomery, AL 36104
Phone:  (334) 269-1803
Fax:     (334) 269-1806
E-mail:  asetzer@eji.org
             rsusskind@eji.org

*Counsel for Vernon Madison*

May 11, 2016

16

## CERTIFICATE OF SERVICE

I hereby certify that on May 11, 2016, a copy of the attached document was served on the following by the ECF system and via email to:

> James Houts
> Office of the Attorney General
> 501 Washington Avenue
> Montgomery, AL 36130
> jhouts@ago.state.al.us

>                             /s/ Angela L. Setzer
>                             ANGELA L. SETZER
>                             Equal Justice Initiative
>                             122 Commerce Street
>                             Montgomery, AL 36104
>                             Phone:  (334) 269-1803
>                             Fax:    (334) 269-1806
>                             E-mail:  asetzer@eji.org