No. 16-12279

## In the UNITED STATES COURT OF APPEALS for the ELEVENTH CIRCUIT

◆

VERNON MADISON,

Appellant,

v.

COMMISSIONER,
Alabama Department of Corrections,

Appellee.

◆

On Appeal from the United States District Court
for the Southern District of Alabama

### RESPONDENT'S OPPOSITION TO PETITIONER'S APPLICATION FOR CERTIFICATE OF APPEALABILITY

Luther Strange
*Attorney General*

Andrew Brasher
*Solicitor General*

James R. Houts
*Assistant Attorney General*
Counsel of Record*

State of Alabama
Office of the Attorney General
501 Washington Avenue
Montgomery, Alabama  36130-0152
(334) 242-7300, 353-1513

May 11, 2016

C-1 of 1

No. 16-12279

*Madison v. Commissioner, Ala. Dept. of Corrs.*

## **CERTIFICATE OF INTERESTED PERSONS**

The undersigned counsel certifies that the certificate of interested persons contained in the Brief of Appellant is complete to the best of undersigned counsel's knowledge, information and belief, except that Jack Willis continues to be an Assistant Alabama Attorney General and Jeffrey Dunn is the Commissioner of the Alabama Department of Corrections, not the Interim Commissioner.

/s/ James R. Houts
JAMES R. HOUTS (ASB-1321-T77J)
*Alabama Assistant Attorney General*

## RESPONDENT'S OPPOSITION TO PETITIONER'S APPLICATION FOR CERTIFICATE OF APPEALABILITY

Respondent opposes Vernon Madison's Application for a Certificate of Appealability because it would be impossible for Madison to prevail under the Anti-terrorism and Effective Death Penalty Act of 1996 (the "AEDPA") on the sole claim identified. As there is no room for debate by reasonable jurists about the propriety of the lower court's decision to deny habeas relief, Moody is not entitled to a certificate of appealability.

**I.     STANDARD FOR GRANTING A CERTIFICATE OF APPEALABILITY**

It is well-settled that a petitioner who is seeking a certificate of appealability must "demonstrate 'a substantial showing of the denial of a constitutional right.'" *Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S. Ct. 1029, 1034 (2003) (quoting 28 U.S.C. § 2253(c)(2)). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Id.* (citing *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1603-04 (2000)). *accord Jones v. Sec'y, Dep't of Corr.*, 607 F.3d 1346, 1349 (11th Cir. 2010); *Muhammad v. Sec'y, Dep't of Corr.*, 554 F.3d 949, 954–55 (11th Cir. 2009). This standard, however, requires consideration of the deference granted to state courts by the AEDPA.

Recognizing that the AEDPA "placed more, rather than fewer, restrictions on

2

the power of federal courts to grant writs of habeas corpus to state prisoners[,]" the Supreme Court has plainly stated "issuance of a COA must not be *pro forma* or a matter of course." *Miller-El*, 537 U.S. at 337, 123 S. Ct. at 1040. To that end, the applicant must prove "'something more than the absence of frivolity' or the existence of mere 'good faith'" on his part. *Id.* at 338 (*quoting Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)).

## II.  MADISON HAS FAILED TO SATISFY THE REQUIREMENT FOR A COA AS TO HIS EIGHTH AMENDMENT COMPENTENCY TO BE EXECUTED CLAIM.

The essence of Madison's claim is that the Mobile County Circuit Court resolved his Eighth Amendment competency-to-be-executed claim in an unreasonable manner or contrary to *Ford v. Wainwright*, 477 U.S. 399, 106 S. Ct. 2595 (1986), and *Panetti v. Quarterman*, 551 U.S. 930, 127 S. Ct. 2842 (2007). Madison's claim does not involve the aspects of *Panetti* and *Ford* governing the procedural protections due a prisoner claiming incompetency for execution purposes, but focuses instead on the question of whether the state court reasonably and properly applied clearly established federal law when it found that Madison had failed to carry his burden of proving his incompetency and that Madison possessed a rational understanding of his impending execution.

The vast majority of the issue Madison seeks permission to appeal is moot. Even if this Court were to look at this mooted issue, however, the constraints of the

3

AEDPA render the issue one for which jurists of reason could not conclude deserve further review or development. Review of the limited issue actually presented—whether the state trial court properly applied *Ford* and *Panetti* on the record before it in concluding that Madison failed to carry his burden of proving incompetency to be executed and that he possessed a rational understanding of his impending execution—would be frivolous under the AEDPA.

### 1. The Issue Madison Presents Contains a False Dilemma Irrelevant to a Proper Review of the District Court's Decision.

As recognized by the district court, Madison's argument as to whether any dementia or amnesia he may suffer falls within the scope of *Ford* or *Panetti* presents a false dilemma, because "it is clear that the state court considered the evidence of Madison's recent diminished capacity and memory loss in reaching its determination that Madison had the requisite rational understanding that he was to be executed because of the murder he committed and that Madison understood that his execution was retribution for the crime." (Doc. 13 at 16) The district court correctly noted that "the state court relied on Madison's ability to talk with Dr. Kirkland about 'very specific things that would indicate that he could remember specific things about the time of the offense even, as well as each trial, as well as the outcome with regard to judicial override and *Batson* challenge' and the death penalty versus life without parole" and Madison's hospital records—including records from his January 2016 hospitalization—to "consider the effects o[f] Madison's dementia on his

4

competency to be executed." (Doc. 13 at 19-20)

Madison's attempt to quibble with this fact—seeking to impose a skewed interpretation of the state court order to create an issue for appeal—is a basis for denying the COA, rather than granting it. This court does not undertake a "grading papers" approach to reviewing a state court decision under § 2254(d). *Fergusson v. Sec'y, Dep't of Corrs.*, 716 F.3d 1315, 1337 (11th Cir. 2013). "Absent a 'conspicuous misapplication of Supreme Court precedent…, we will not presume that a state court misapplied federal law' or failed to properly comprehend Supreme Court precedent." *Id*. (quoting, *Parker v. Sec'y, Dep't of Corrs*, 331 F.3d 764, 785 (11th Cir. 2003).

Here, the state court never indicated that it was not considering evidence of Madison's stroke-related ailments.[1] This Court cannot grant the requested COA based on Madison's unfair characterization of the state court's order, reading into it an exclusion of evidence from consideration where the court did not explicitly state it was doing so and where the plain language of the order indicates the court considered that evidence. Instead, this Court is required to determine what arguments or theories supported, *or could have supported*, the state court's decision

---

[1] As noted by the district court, part of the state court findings pertaining to the lack of psychosis or delusions is attributable to the fact that the possible existence of delusions and psychosis had been alleged by Madison in order to obtain a competency examination and hearing. (Doc. 13 at n.7.)

5

in the absence of explicit findings. *See, e.g.*, *Harrington v. Richter*, 562 U.S. 86, 102, 131 S. Ct. 770, 786 (2011). No jurists of reason, following the requirements of the Supreme Court and the AEDPA, could debate the propriety of the district court's failure to interpret the state court decision in the unfair manner Madison advocates.

> **2. No Reasonable Jurist Could Question Whether the State Court Adjudication Was Contrary to or an Unreasonable Application of *Ford* and *Panetti*, Even if the State Court Actually Had Failed to Consider Evidence of Madison's Stroke-Related Ailments.**

Even if this Court were to address the false dilemma Madison advances—that the state trial court erred by not considering evidence of stroke-related dementia or amnesia under *Ford* and *Panetti*—he is not entitled to a COA under the relevant standards of federal review mandated by the AEDPA. The Supreme Court repeatedly has stated that "clearly established federal law" for AEDPA purposes refers to the holdings of its cases and not the dicta found within. *See, e.g.*, *Woods v. Donald*, __ U.S. __, 135 S. Ct. 1372, 1376-77 (March 30, 2015), *White v. Woodall*, __ U.S. __, 134 S. Ct. 1697 (April 23, 2014), *Howes v. Fields*, __ U.S. __, 132 S. Ct. 1181 (Feb. 21, 2012), *Renico v. Lett*, 559 U.S. 766, 778-79 (2010).

It is beyond debate that both *Panetti* and *Ford* restrict themselves, by their own holdings, to cases where a person's mental illness, or insanity, prevents him from having a rational understanding of his punishment. For example, the Court described its holding in *Ford* as being that "[t]he Eighth Amendment prohibits the State from inflicting the penalty of death upon a prisoner *who is insane*." *Ford*, 477

6

U.S. at 410 (emphasis added). Alternatively, the Court restated its holding as, "Today we have explicitly recognized in our law a principle that has long resided there. It is no less abhorrent today than it has been for centuries to exact in penance the life of one *whose mental illness* prevents him from comprehending the reasons for the penalty or its implications." *Ford*, 477 U.S. at 417 (emphasis added). *Panetti* continued this focus on a prisoner's mental illness for purposes of Eighth Amendment analysis, focusing on whether delusions caused by mental illness prevented the prisoner from having a rational understanding of his execution. *See, e.g.*, *Panetti*, 551 U.S. at 934 (*quoting*, *Ford*, 477 U.S. at 409) ("[T]he Eighth Amendment prohibits a State from carrying out a sentence of death upon a prisoner who is insane."), 954 (noting the question before the Court as "whether the Eighth Amendment permits the execution of a prisoner whose mental illness deprives him of 'the mental capacity to understand that he is being executed as punishment for a crime.'"), 960 ("The beginning of doubt about competence in a case like petitioner's is not a misanthropic personality or an amoral character. *It is a psychotic disorder*.") (emphasis added). Madison has not cited a single Supreme Court case dealing with dementia and memory deficits in relation to a person's competency to be executed.

At best, Madison alleges that the circumstances of his case (i.e., stroke-related dementia and/or amnesia) are "similar to" the holdings in *Ford* and *Panetti*. "Similar to," however, is not enough to obtain relief under the AEDPA. *See*, *Woods*, 135 S.

7

Ct. at 1377 (citing *Carey v. Musladin*, 549 U.S. 70, 76-77 and n.2, 127 S. Ct. 649, 653-54 (2006)). While jurists of reason might debate whether the Supreme Court could one day extend *Ford* and *Panetti* to dementia or amnesia cases, they cannot debate whether the Court *has already done so*. *See, e.g.*, *Woods*, 135 S. Ct. at 1378 ("All that matters here, and all that should have mattered to the Sixth Circuit, is that we have not held that *Cronic* applies to the circumstances presented in this case."); *White*, 134 S. Ct. at 1703 ("We need not decide here, and express no view on, whether the conclusion that a no-adverse-inference instruction was required would be correct in a case not reviewed through the lens of § 2254(d)(1).")

Ultimately, Madison is alleging that the state trial court unreasonable failed to extend *Ford* and *Panetti* to cases where it is stroke-related impairments to mental capacity, rather than psychosis or delusions caused by severe mental illness, that are alleged to prevent a rational understanding of the prisoner's execution. The Supreme Court, however, has rejected the "unreasonable-refusal-to-extend-rule" under the AEDPA. *White*, 134 S. Ct. at 1706. As noted in *White*, the AEDPA "does not require state courts to *extend* [Supreme Court] precedent or license federal courts to treat the failure to do so as error." *Id*. (emphasis in original). While Madison can falsely allege that the state court refused to consider dementia as being the same as psychosis or gross delusions, this Court cannot grant relief on that basis even if it were true.

8

> **3. No Reasonable Jurist Could Disagree with the District Court's Finding That the State Court Properly Applied *Ford* and *Panetti* in Determining that Madison Failed to Prove by a Preponderance of the Evidence That He Is Incompetent to be Executed.**

Madison does not deny that the state trial court correctly identified the relevant "clearly established federal law" as being *Ford* and *Panetti*. There is no question or debate, then, that the state court identified and applied the appropriate federal law in this case. This issue cannot form the basis for the grant of a COA.

Instead, the only question Madison seeks to present on appeal is whether the state trial court applied *Ford* and *Panetti* reasonably based on the facts before the state court at the time it rendered its decision. In *Ferguson,* 716 F.3d at 1337, this Court explained, "Because the Supreme Court refrained from clearly establishing in *Panetti* any definition of rational understanding, state courts can hardly be faulted for not clearly defining it themselves." This Court then held that what *Panetti* "clearly establishes" ("and pretty much that alone") is that a court "may not 'treat delusional beliefs as irrelevant once the petitioner is aware the State has identified the link between his crime and the punishment to be inflicted.'" *Id*. at 1337-38. Based on this precedent, Madison cannot create a question as to whether the state court adjudication of his claim was "contrary to" or an "unreasonable application of" *Panetti* because the state court specifically did not find evidence of delusions, psychosis or mental illness.

The state trial court specifically found "that Madison has a rationale (sic) understanding, as required by *Panetti*, that he is going to be executed because of the murder he committed and a rational (sic) understanding that the State is seeking retribution and that he will die when he is executed." (Vol. II, Tab R-12, at 10.) The trial court did not say it excluded any testimony or documentary evidence in reaching that conclusion, but rather affirmatively found that Madison possessed a rational understanding as required by *Panetti*.

As in *Ferguson*, the state court in this case applied *Panetti*'s "rational understanding" standard, considered conflicting expert testimony about the nature of Madison's diminished mental capacity, and made a determination about his competency to be executed. Madison has not shown that any aspects of the district or state court decisions are materially different from the issues presented in *Fergusson* and the fact that Madison relies on the state trial court's willingness to extend *Ford* and *Panetti* to the facts of his case—though not required by clearly established federal law—completely forecloses relief under the AEDPA. For these reasons, Madison is not entitled to the requested COA.

### III.  CONCLUSION

Madison cannot meet the standard for obtaining a certificate of appealability for this Court to review the district court's denial of habeas relief. Respondent, therefore, respectfully requests that the application for a COA be denied.

Respectfully submitted,

Luther Strange
Attorney General


***s/ James R. Houts***
James R. Houts (ASB-1321-T77J)
*Assistant Attorney General*

# **CERTIFICATE OF COMPLIANCE WITH RULES 21 (d) and 32(a)**

1.  I certify that this petition complies with the page limitations set forth in Fed. R. App. P. 21(d).  This brief does not exceed 30 pages, exclusive of the disclosure statement, the proof of service, and the accompanying documents required by Rule 21(a)(2)(C).

2.  In addition, this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14-point Times New Roman font.

*/s/ James R. Houts*
James R. Houts
*Alabama Assistant Attorney General*
*Counsel for Petitioners*

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of May, 2016, I served a copy of the foregoing on the attorney for the Appellant, by placing same in the United States mail, first class, postage prepaid and addressed as follows:

Angela L. Setzer
Randall S. Susskind
Equal Justice Initiative
122 Commerce Street
Montgomery, AL 36104

And by electronic mail to      asetzer@eji.org


*s/ James R. Houts*
James R. Houts (ASB-1321-T77J)
*Assistant Attorney General*

ADDRESS OF COUNSEL:

Office of the Attorney General
Capital Litigation Division
501 Washington Avenue
Montgomery, Alabama  36130
(334) 242-7300
(334) 353-3637 Fax
jhouts@ago.state.al.us